UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

SHARI BOWERS, *et al.*,

        Plaintiffs,

    v.

CITY OF SALAMANCA, *et al.*,

        Defendants.

─────────────────────────────────

20-CV-1206-LJV
DECISION & ORDER

## INTRODUCTION

On September 4, 2020, the plaintiffs, Shari and Edward Bowers,[1] commenced this action under 42 U.S.C. § 1983. Docket Item 1. They allege that the defendants "subjected [Edward] to arrest without probable cause, to unlawful imprisonment, and excessive physical force [sic]"; they also allege malicious prosecution and seek damages for Shari's loss of consortium. *Id.* at ¶¶ 2, 15. On November 2, 2020, the defendants, City of Salamanca ("Salamanca"), City of Salamanca Police Department ("SPD"), and two John Doe police officers, moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Docket Item 5.

───────────────────

[1] To distinguish between the two plaintiffs, this decision will refer to them by their first names.

The Bowerses did not respond to that motion,[2] so on April 12, 2021, this Court ordered them to show cause "why this Court should not decide the motion to dismiss based on only the defendants' submissions." Docket Item 8. On April 28, 2021, the Bowerses responded to the order to show cause, opposed the motion to dismiss, provided reasons why the opposition was not timely filed, and moved to amend their complaint. Docket Item 9. The proposed amended complaint identified the John Doe officers as Samuel DePasquale and James Yansick and added additional support for the Bowerses' claims. Docket Item 9-1. On May 19, 2021, the defendants responded to the motion to amend. Docket Item 13. The Bowerses did not reply.

For the following reasons, the motion to amend is granted and the motion to dismiss is granted in part and denied in part. Edward's claims against DePasquale and Yansick for false arrest or imprisonment and excessive force may proceed, but the rest of the Bowerses' claims are dismissed.

## **FACTUAL ALLEGATIONS**

On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trustees of Upstate New York Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016) (citing *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014)). In light of that standard, the amended complaint[3] tells the following story.

_____

[2] On December 4, 2020, the defendants submitted a reply declaration in support of the motion to dismiss, Docket Item 7, arguing that the motion should be granted because the "[p]laintiffs have filed no response or opposition," *id.* at 2.

[3] Because the motion to amend is granted, the Court takes the facts from that pleading.

2

"On or about" September 1, 2017, Edward was gambling at the Seneca Allegany Casino in Salamanca, New York. Docket Item 9-1 at ¶ 12. Edward wanted to leave the casino but "felt he had [] too much alcohol to drink to drive." *Id.* Therefore, Edward decided to get his phone out of his truck and call some relatives for a ride home. *Id.* As Edward walked to his truck, he "was knocked unconscious from behind and [had] $575.00 in chips stolen from him." *Id.*

"When Casino security arrived, [Edward] was asked if he wanted the police called to report the robbery." *Id.* at ¶ 13. "He said yes, and later [DePasquale and Yansick] arrived from SPD." *Id.* "[I]nstead of taking [Edward's] information about [being] mugged and robbed," however, "they with increasing forcefulness insisted that he get off the floor where he was lying and go with them to the police station." *Id.* Edward "refused" and told the officers "that he was waiting for his relatives to arrive." *Id.*

"[A]cting jointly," DePasquale and Yansick "refused to accept this." *Id.* They forced Edward to get up, "slammed him into the concrete wall, cuffed [sic] him, and forced him to their patrol car." *Id.* As they forced Edward "into the rear seat," they "hit[] him in the left hip with something hard (probably a billy club)." *Id.* Edward suffered "significant injur[ies]" as a result of the assault, "including a torn gluteus minimus muscle and gluteus medius tendon that ultimately required surgical repair[] [and] strains/sprains of the right rotator cuff and the spinal structure." *Id.*

"[Edward] was ultimately wrongfully charged with obstructing governmental administration and resisting arrest." *Id.* at ¶ 14. "The arrest and charges imposed were done [sic] without probable cause[] or reasonable suspicion that [Edward] had

committed a crime." *Id.* at ¶ 15. Indeed, both charges ultimately were dismissed on February 7, 2018. *Id.* at ¶ 14.

Salamanca "is responsible for the policies, practices, supervision, implementation[,] and conduct of all SPD matters, including for ensuring that the SPD personnel obey the laws of the United States and the State of New York." *Id.* at ¶ 8. But SPD officers have "a long history of arresting persons without probable cause or reasonable suspicion that they [] committed a crime[] [and] using unnecessary excessive force." *Id.* at ¶ 9. In fact, the Bowerses know of "[o]ne such incident" that is "part of this history"—on July 4, 2012, an SPD officer used a taser on Andrew Jaquish for "swearing at the officer" and "allow[ed Jaquish] to fall onto his face," resulting in "multiple facial fracture[s]." *Id.* at ¶ 10.

## DISCUSSION

### I.  MOTION TO AMEND

Under Federal Rule of Civil Procedure 15(a)(2), a "court should freely give leave [to amend] when justice so requires." "Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Id.* Because there is no evidence of bad faith or that the proposed amendment would unduly prejudice the defendants, the motion to amend, Docket Item 9, is granted.

"When . . . a motion to amend is filed in response to a pending motion to dismiss, 'a court has a variety of ways in which' to proceed, 'from denying the motion [to dismiss]

as moot to considering the merits of the motion [to dismiss] in light of the [proposed] amended complaint.'" *Willis v. Rochester Police Dep't*, 2018 WL 4637378, at *2 (W.D.N.Y. Sept. 27, 2018) (alterations in original) (citation omitted).  The Bowerses identify the previously unnamed defendants and supplement their claims, "but the core of [their] pleadings remain the same."  *See id.*  Therefore, the Court considers whether the amended complaint survives the defendants' outstanding motion to dismiss, Docket Item 5.

## II.  MOTION TO DISMISS

To decide a motion to dismiss for failure to state a claim upon which relief may be granted, courts "ask whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "The court accepts as true all well-pleaded factual allegations in the complaint [and] draws all reasonable inferences in favor of the nonmoving party." *Id.* (citation omitted).  But courts "are not bound to accept as true a legal conclusion couched as a factual allegation," nor will "a formulaic recitation of the elements of a cause of action" suffice.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

### A.  Edward's Section 1983 Claims

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. Cty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997)

(citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

### 1. Claim Against Salamanca

A municipality cannot be held liable under section 1983 unless the challenged action was undertaken pursuant to a municipal policy or custom. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To state such a claim, a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983)). "[A] municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials," such as "the persistent failure to discipline subordinates who violate [persons'] civil rights." *Id.* (alteration in original) (second excerpt quoting *Batista*, 702 F.2d at 397).

"In 'limited circumstances,' a municipality may also be held liable for its failure to train its employees." *Hernandez v. United States*, 939 F.3d 191, 206 (2d Cir. 2019) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "To state a failure-to-train claim, a plaintiff must allege that 'a municipality's failure to train its employees in a relevant respect . . . amount[ed] to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Id.* (alterations in original) (quoting *Connick*, 563 U.S. at 61). Because "[d]eliberate indifference is a stringent standard of fault," to survive a motion to dismiss, a plaintiff must plausibly allege that the

municipality "fail[ed] to act when it ha[d] 'actual or constructive notice,' generally from '[a] pattern of similar constitutional violations by untrained employees,' that its training program [was] 'deficient.'" *Id.* at 207 (quoting *Connick*, 563 U.S. at 61). Stated differently, a plaintiff must allege "that the municipal action was taken with deliberate indifference as to its known or obvious consequences. A[n allegation] of simple or even heightened negligence will not suffice." *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (citation and alteration omitted).

Edward does not state a viable claim against Salamanca. He alleges broadly that SPD has a "long history of arresting persons without probable cause or reasonable suspicion" and "using unnecessary excessive force." Docket Item 9-1 at ¶¶ 8-10. But such conclusory allegations "that a municipality has [an unconstitutional] custom or policy [are] insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *See Zahra*, 48 F.3d at 685. And Edward has failed to allege any facts "tending to support" such an inference here. For example, he does not allege what the supposed unconstitutional policy was or even that it caused the officers' conduct against him. *See Smith v. Town of Lewiston*, 2020 WL 5237924, at *12 (W.D.N.Y. July 30, 2020) ("[M]ere generalized assertions as to the existence of a non-specific custom or policy [] will not satisfy *Monell*'s requirements."); *United States v. Erie Cnty.*, 724 F. Supp. 2d 357, 370-71 (W.D.N.Y. 2010) ("Section 1983 imposes liability on a municipality when an official custom or policy *causes* an employee to violate an individual's constitutional rights.") (emphasis in original); *Duncan v. City of New York*, 2012 WL 1672929, at *2-3 (E.D.N.Y. May 14, 2012) ("[B]oilerplate statements" that a municipality had a "custom and policy of making illegal and false

arrests with excessive force [and] without probable cause . . . are insufficient to state a claim of municipal liability under *Monell*.").

The Bowerses assert that there have been prior "complaints" of unconstitutional conduct, including the 2012 "claim of Andrew Jaquish." *See* Docket Item 9-1 at ¶ 9-10. But "without any allegations as to the ultimate disposition of those lawsuits," that general assertion supported by a single example "is insufficient to allege a practice so widespread and persistent as to amount to a policy or custom of [Salamanca]." *See Pryor v. City of New York*, 2018 WL 4538904, at *4 (S.D.N.Y. Sept. 21, 2018); *see also Scott v. City of Rochester*, 2018 WL 4681626, at *6 (W.D.N.Y. Sept. 28, 2018) ("[A] single example of a police officer fabricating charges to hide an excessive use of force coupled with the allegations here simply cannot establish a 'persistent and widespread' custom that carries the force of law."). So the Jaquish example does not salvage the claim.

Moreover, Edward has failed to plead a viable failure-to-train claim because he has not alleged facts demonstrating Salamanca's deliberate indifference. He alleges generally that various unknown supervisors knew of SDP's history of unconstitutional practices, that the supervisors failed to discipline officers or otherwise take remedial action, and that "[s]uch failures and inactions . . . amount[ed] to deliberate indifference." Docket Item 9-1 at ¶ 9. But again, such conclusory allegations are insufficient. *See Triano v. Town of Harrison, New York*, 895 F. Supp. 2d 526, 539 (S.D.N.Y. 2012) (explaining that to plead a failure-to-train claim, a plaintiff must allege that "the type of police misconduct at issue . . . was known to the [municipality]" and must "also identify

other specific instances of police misconduct" sufficient to show "a pattern of similar constitutional violations by untrained employees") (internal marks omitted).

Finally, Edward's claim that discovery will reveal an unconstitutional custom or policy, *see* Docket Item 9-1 at ¶ 9, is insufficient to withstand the defendants' motion to dismiss. "[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Towner v. Town of Cohocton*, 2021 WL 1966799, at *7 (W.D.N.Y. May 17, 2021) (alteration in original) (quoting *Angiulo v. Cty. of Westchester*, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012)).

For all these reasons, the motion to dismiss Edward's claim against Salamanca is granted, and this claim is dismissed without prejudice.

### 2.    Claim Against SPD

"Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002). A municipal police department is considered an administrative arm of a municipality and, therefore, "is not subject to suit under [s]ection 1983." *Martinez v. Queens Cty. Dist. Atty.*, 2014 WL 1011054, at *16 (E.D.N.Y. Mar. 17, 2014); *see also Kearse v. Kulikowski*, 2019 WL 3252916, at *2 (W.D.N.Y. Jul. 19, 2019) ("Municipal police departments are not municipalities or 'persons' subject to suit under [section] 1983.").

For that reason, SPD cannot be sued under section 1983. Therefore, the motion to dismiss any claim against SPD is granted. And because any further amendment would be futile, this claim is dismissed with prejudice. *See Cuoco v. Moritsugu*, 222

F.3d 99, 112 (2d Cir. 2000) (Leave to amend pleadings may be denied when any amendment would be "futile.").

### 3. Claims Against DePasquale and Yansick

#### a. Timeliness

The defendants argue that Edward's claims are untimely because they were brought after the statute of limitations expired. They also argue that even if the original complaint had been timely, the amended complaint would not relate back to the date when the original complaint was filed. *See* Docket Item 5 at 5; Docket Item 13 at 8, 14. This Court disagrees with both arguments.

##### i. Statute of Limitations

"New York's three[-]year statute of limitations . . . governs [section] 1983 actions brought in federal district court in New York." *Jewell v. Cty. of Nassau*, 917 F.2d 738, 740 (2d Cir. 1990) (citing N.Y. C.P.L.R. § 214(2); *Romer v. Leary*, 425 F.2d 186 (2d Cir. 1970)). Moreover, in such cases, "federal courts [are] obligated . . . to apply the New York rule for tolling that statute of limitations." *Id.* (quoting *Bd. of Regents v. Tomanio,* 446 U.S. 478, 483 (1980)). A federal court's power otherwise to toll statutes of limitations borrowed from state law is limited to those situations "where application of the statute of limitations would frustrate the policy underlying the federal cause of action." *Id.* (citing *Johnson v. Ry. Express Agency, Inc.,* 421 U.S. 454, 465 (1975); *Meyer v. Frank,* 550 F.2d 726, 729 (2d Cir. 1977)). "Use of the New York statute of limitations in [section] 1983 actions does not violate such policy." *Id.*

Section 1983 claims accrue (that is, the statute of limitations begins to run) when the plaintiff "knew or had reason to know of the injury which is the basis of [his] action."

*Onibokun v. Chandler*, 749 F. App'x 65, 66 (2d Cir. 2019) (summary order) (internal

marks omitted) (quoting *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994)).  A claim for

excessive force thus accrues "when the assault allegedly occurred."  *See Engles v.

Jones*, 405 F. Supp. 3d 397, 405 (W.D.N.Y. 2019).  A claim for false arrest or false

imprisonment accrues "when the plaintiff was held pursuant to legal process—that is,

when he [was] 'bound over by a magistrate or arraigned on charges.'"  *Smith v. New

York*, 2019 WL 1208384, at *2 (W.D.N.Y. Mar. 14, 2019) (quoting *Wallace v. Kato*, 549

U.S. 384, 388-90 (2007)).

Edward alleges that DePasquale and Yansick used excessive force against and

arrested him "[o]n or about" September 1, 2017.  Docket Item 9-1 at ¶ 12.  His claims for

excessive force therefore accrued "[o]n or about September 1, 2017," and his claims for

false arrest and false imprisonment accrued when Edward was arrested and

arraigned—likely the same date as his arrest or shortly thereafter.  *See Smith*, 2019 WL

1208384, at *2 ("Plaintiff's false arrest claim accrued on or about September 23, 2014,

the date of his arrest, which the Court assumes was the date (or near the date) Plaintiff

was arraigned.").  The original complaint was not filed until September 4, 2020, Docket

Item 1—three days after the statute of limitations would have expired without tolling.

On March 7, 2020, however, New York Governor Andrew Cuomo issued

Executive Order 202.8, tolling statutes of limitations in New York.[4]  *See* Docket Item 13-

2 at 2-3.  The Bowerses argue that Executive Order 202.8 tolled the statute of

limitations in this case.  Docket Item 9-2 at 3.  The defendants disagree and argue that

---

[4] This Executive Order subsequently was extended through November 3, 2020.
*See* Exec. Order 202.67 (Oct. 4, 2020).

the executive order does not apply in federal court. Docket Item 13 at 8-10. In support

of that argument, the defendants cite *Johnson v. Fargione*, *et al.*, 2021 WL 1406683

(N.D.N.Y. Feb. 17, 2021), *report and recommendation adopted by* 2021 WL 1404554

(N.D.N.Y. Apr. 14, 2021), where the Northern District of New York found that the

executive order did not toll the statute of limitations in a section 1983 case brought in

federal court, *see* Docket Item 13 at 8-9 (citing *Johnson*, 2021 WL 1406683, at *3

(finding that the plaintiff "fail[ed] to demonstrate that a New York State executive order

applie[d] to actions commenced in [f]ederal court alleging violations of the U.S.

Constitution")).

But at least two other district courts in this circuit have found that Executive Order

202.8 indeed applies to federal cases involving New York's statutes of limitations—with

one specifically holding that the order tolled the statute of limitations in section 1983

actions. *See Bonilla v. City of New York*, 2020 WL 6686531 (E.D.N.Y. Oct. 3, 2020)

*affirmed by* 2020 WL 6637214 (E.D.N.Y. Nov. 12, 2020) (finding Executive Order 202.8

applicable to section 1983 cases brought in federal court); *Citi Connect, LLC v. Local

Union No. 3*, 2020 WL 5940143, at *3-4 (S.D.N.Y. Oct. 7, 2020) (holding that Executive

Order 202.8 tolled the statute of limitations in a claim brought under the False Claims

Act, which, like section 1983, does not provide a federal statute of limitations).

The Court finds the latter cases more persuasive and follows *Bonilla* in

concluding that Executive Order 202.8 applies in section 1983 cases. "Because the

Supreme Court wanted section 1983 actions to be subject to state 'tolling rules,' it

seems likely that both statutory and common law rules are to be borrowed." *Pearl v.

City of Long Beach*, 296 F.3d 76, 81 (2d Cir. 2002). "Executive Order 202.8 tolls 'any

specific time limit for the commencement, filing, or service of any legal action . . . as prescribed by the procedural laws of the state.'" *Bonilla*, 2020 WL 6637214, at *3. "There is no question that the state's 'procedural laws' governing tolling are 'tolling rules' that should be 'borrowed.'" *Id.* (citing *Pearl*, 296 F.3d at 81). Because Executive Order 202.8 tolled the statute of limitations, the original complaint was timely here.

### ii.     Relation Back

The defendants also argue that whether the original complaint was timely does not really matter. They say that Edward's claims against DePasquale and Yansick are time barred regardless because the amended complaint—which clearly was filed after the statute of limitations expired, tolled or not tolled[5]—does not relate back to the original complaint. *See* Docket Item 13 at 14.

"Where a plaintiff names 'John Doe' as a placeholder defendant because he does not know the identity of an individual defendant, he generally is required to replace the placeholder with a named party within the applicable statute of limitations." *Abreu v. City of New York*, 657 F. Supp. 2d 357, 363 (E.D.N.Y. 2009). "A plaintiff who finds that the limitations period on his claim has run may still seek to amend his complaint to add

---

[5] There is some uncertainty about whether Executive Order 202.8 "suspended" the statute of limitations or "tolled" it. *See Lopez-Motherway v. City of Long Beach*, 2021 WL 965158, at *7-8 (E.D.N.Y. Mar. 15, 2021) ("A 'toll' means that the limitations period 'stops running,' only to 'start[] running again when the tolling period ends, picking up where it left off . . . . In contrast, a 'suspension' 'simply extends the expiration date of the limitations period to a later defined date on the calendar[,] . . . without re-starting the statute of limitations clock at the end of that period.'") (citations omitted)). If the executive order suspended the statute of limitations, it expired on November 3, 2020; if the order tolled the statute, it expired on April 19, 2021. This Court need not decide this issue because the amended complaint was filed after both dates passed. *See* Docket Item 9 (amended complaint filed on April 28, 2021).

additional defendants, but he will be bound by the requirement that the proposed amendment 'relate back' to the date that the original complaint was filed." *Id.* (citing Fed. R. Civ. P. 15(c); *Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 35 (2d Cir. 1996)).

The standards governing whether claims relate back are provided in Federal Rule of Civil Procedure 15(c)(1). "Under Rule 15(c)(1)(C), an amended pleading that 'changes the party or the naming of the party against whom a claim is asserted' relates back to the date of the original pleading if the claim asserted against that party arises out of the same 'conduct, transaction, or occurrence' and if, within the time limit for service, the new party '(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.'" *Harris v. City of New York*, 2016 WL 427908, at *4 (S.D.N.Y. Feb. 3, 2016) (quoting Fed. R. Civ. P. 15(c)(1)(C)).

But Rule 15(c)(1)(C) "does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities." *Harris*, 2016 WL 427908, at *4 (citing *Sewell v. Bernardin*, 795 F.3d 337, 342 (2d Cir. 2015) (quoting *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995))); *see also Abreu*, 657 F. Supp. 2d at 363 ("[T]he failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake. Thus, a plaintiff who 'believe[s] that there exist[s] individual defendants who [are] potentially liable for his injuries, but [who does] not know their exact identities' and who waits until after the expiration of the limitations period to remedy this lack of knowledge (by naming a

specific individual as a defendant), will find his claim to be time-barred.").  So the amended complaint does not relate back under Rule 15(c)(1)(C).

"Alternatively, under Rule 15(c)(1)(A), an amendment to a pleading relates back to the original pleading when 'the law that provides the applicable statute of limitations allows relation back.'"  *Harris*, 2016 WL 427908, at *4 (citing Fed. R. Civ. P. 15(c)(1)(A)).  For section 1983 claims arising in New York, that law is section 1024 of the New York Civil Practice Law and Rules ("CPLR").  *Hogan v. Fisher*, 738 F.3d 509, 518-19 (2d Cir. 2013).  CPLR section 1024 explicitly addresses suits involving unknown parties.  *Id.*

"To take advantage of [section] 1024, a party must meet two requirements":  (1) "the party must 'exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name'"; and (2) "the party must describe the John Doe party 'in such form as will fairly apprise the party that [he] is the intended defendant.'"  *Id.* at 519 (second alteration in original) (citations omitted).  "The due diligence requirement of [section] 1024 'is not forgiving,' and it is the plaintiff's burden to identify the defendant's name, or at least make a good faith effort to do so."  *Duran v. Cty. of Monroe*, 2019 WL 6464279, at *6 (W.D.N.Y. Dec. 2, 2019).

"A plaintiff exercising due diligence will take concrete and timely steps to ascertain an officer defendant's identity."  *Barrett v. City of Newburgh*, 720 F. App'x 29, 33 (2d Cir. 2017) (summary order).  "[T]o employ the procedural mechanism made available by [section] 1024, the plaintiff must show that he made genuine effort[s] to ascertain the defendants' identities prior to the running of the [s]tatute of [l]imitations."

*Duran*, 2019 WL 6464279, at *6 (quoting *Luckern v. Lyonsdale Energy Ltd. P'ship*, 229 A.D.2d 249, 253, 654 N.Y.S.2d 543, 545 (4th Dep't 1997)).

Here, in an affirmation made "under the penalties of perjury," the Bowerses' attorney, Brian Chapin York, Esq., says that "[b]efore [he] began drafting the complaint, [he] made multiple unsuccessful attempts to learn the names of the arresting officers through inquiries to the Salamanca Police Department and Salamanca City Court." Docket Item 9 at ¶ 11. He says that "the police department repeatedly said they would have someone look into it and let [him] know, but it never responded with the identity of the arresting officers or any of the arrest documents." *Id.* Likewise, he says, "[t]he city court did not respond to [his] messages requesting the court documents regarding the charges against [Edward] before [he] had to file the complaint." *Id.* "This was during the height of the COVID-19 pandemic when the courts and most other offices were closed or operating in a very limited way[,] and travel [was] prohibited or discouraged." *Id.* ¶ 12.

York conceivably could have taken additional steps to ascertain the officers' names before filing the original complaint. Nevertheless, the Court finds that he exercised due diligence here, especially given the unique circumstances posed by the COVID-19 pandemic. Because many government agencies were closed or operating on a limited basis until earlier this year, it may very well be that the steps the defendants suggest—such as submitting requests under New York's Freedom of Information Law, *see* Docket Item 13 at 17-18—would have proven fruitless. But regardless, York "made genuine effort[s] to ascertain" DePasquale's and Yansick's names, *see Duran*, 2019 WL 6464279, at *6, and he certainly "exceeded the efforts expended in instances in which

due diligence was found to be clearly inadequate," *see Barrett*, 720 F. App'x at 34

(citing *Ceara v. Deacon*, 2017 WL 363003, at *11 (collecting cases where the plaintiff

could not document any concrete efforts to seek information) (additional citations

omitted)).  That is good enough under the circumstances here.

The Bowerses also meet the second section 1024 requirement.  Although the

original complaint does not describe the officers' appearances, it does describe the

location, date, and circumstances of Edward's arrest in sufficient detail.  *See* Docket

Item 1 at ¶¶ 11-12.  Indeed, only two officers were on the scene, and Edward sued both

those officers.  *See id.*  Therefore, the original complaint "fairly apprise[d]" DePasquale

and Yansick, through SPD, that they were the intended defendants.  *See Duran*, 2019

WL 6464279, at *6.

For all those reasons, Edward's claims against DePasquale and Yansick are not

time barred.

### b.    *False Arrest & False Imprisonment*

"The tort of false arrest supports a claim against state police [officers] under

section 1983 because it violates the Fourth Amendment."  *See Cook v. Sheldon*, 41

F.3d 73, 77 (2d Cir. 1994) (citing *Posr v. Doherty*, 944 F.2d 91, 97, 98 (2d Cir. 1991)).

"In New York, the tort of false arrest is synonymous with that of false

imprisonment."  *Posr*, 944 F.2d at 96 (citing *Jacques v. Sears, Roebuck & Co.*, 30

N.Y.2d 466, 473, 285 N.E.2d, 871, 877  (1972)); *see also Cook*, 41 F.3d at 80 ("[S]tate

law is [the] authoritative source of [the] elements of [a] section 1983 cause of action.")

(citing *Wilson v. Garcia*, 471 U.S. 261, 277 (1985)).

To state a claim for false arrest or imprisonment under New York law, a plaintiff must show that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Id.* at 97 (quoting *Broughton v. State*, 37 N.Y.2d 451, 456-57, 335 N.E.2d 310, 316 (1975)). Privilege includes an arrest made with probable cause. *See Broughton*, 37 N.Y.2d at 458, 335 N.E.2d at 315 ("Justification may be established by showing that the arrest was based on probable cause."). Probable cause exists "when the arresting officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *O'Neill v. Town of Babylon*, 986 F.2d 646, 650 (2d Cir. 1993) (quoting *Calamia v. City of New York*, 879 F.2d 1025, 1032 (2d Cir. 1989)).

The amended complaint states a viable claim for false arrest or imprisonment against DePasquale and Yansick. Edward alleges that after he was assaulted and robbed, he called the police for help. Docket Item 9-1 at ¶ 13. But when SPD officers DePasquale and Yansick arrived on scene, they did not help Edward; instead, they "slammed" him into a wall and arrested him. *Id.* So Edward adequately alleges that DePasquale and Yansick arrested him and that they did so without probable cause.

The defendants argue that the amended complaint does not plead the officers' personal involvement. Docket Item 5 at 13; Docket Item 13 at 19. This Court disagrees.

"To survive a motion to dismiss, a plaintiff must allege sufficient facts to support an inference that each defendant 'was directly involved' in the arrest." *Lopez-*

*Motherway*, 2021 WL 965158, at *3 (quoting *Crosby v. New York State Off. for People with Developmental Disabilities*, 2015 WL 5542517, at *4 (W.D.N.Y. Sept. 18, 2015)). But "[a]n officer need not necessarily have directly seized and handcuffed an individual to be liable for false arrest; he may also take part in less direct ways." *Duncan v. City of New York*, 2016 WL 11263166, at *8 (E.D.N.Y. Sept. 29, 2016). For example, an officer might participate in a false arrest by "fill[ing] out [] arresting paperwork . . . [that] include[s] 'false statements' about what the officers allegedly saw." *See Marom v. City of New York*, 2016 WL 916424, at *16 (S.D.N.Y. Mar. 7, 2016).

The amended complaint alleges that both DePasquale and Yansick arrested Edward. That is enough to allege each officer's personal involvement. Therefore, the motion to dismiss is denied with respect to Edward's false arrest or imprisonment claims against DePasquale and Yansick.

### c.    Excessive Force

"Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (internal quotation marks and citation omitted). But "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks and citation omitted). Moreover, to maintain an excessive force claim, a plaintiff must allege that he or she sustained an injury. *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987). Conclusory allegations of "physical and emotional injuries . . . are no more than labels and

conclusions and do not plausibly state an excessive force claim." *Youngblood v. City of New York*, 2016 WL 3919650, at *4 (S.D.N.Y. June 27, 2016) (internal marks omitted) (citing *Twombly*, 550 U.S. at 555).

The amended complaint pleads viable excessive force claims against DePasquale and Yansick. Edward alleges that while he was on the ground, DePasquale and Yansick forced him up and "slammed" him into a "concrete wall." Docket Item 9-1 at ¶ 13. He says that the officers hit him with a hard object—"probably a billy club"—in the left hip, causing a "torn gluteus minimus muscle and gluteus medius tendon" as well as shoulder and spine injuries. *Id.* These facts sufficiently allege that the officers used force that was "objectively unreasonable in light of the facts and circumstances [that] confront[ed] them." *See Maxwell*, 380 F.3d at 108.

Moreover, for many of the same reasons noted above, the amended complaint adequately alleges both DePasquale's and Yansick's personal involvement in using excessive force. The amended complaint alleges that both officers threw Edward into the wall. And while Edward alleges that he was hit with only one hard object—suggesting that he was hit by only one officer—a plaintiff "need not establish who, among a group of officers, directly participated in the attack and who failed to intervene." *See Smith v. Sawyer*, 435 F. Supp. 3d 417, 441 (N.D.N.Y. 2020) (quotation marks and citation omitted). A plaintiff need allege only "that [the defendants] were present on the night in question and participated in [the plaintiff's] arrest." *Id.* (quotation marks omitted). Edward has done that.

The motion to dismiss Edward's excessive force claims against DePasquale and Yansick therefore is denied.[6]

### d.    Malicious Prosecution

To state a section 1983 claim for malicious prosecution, a plaintiff must show that the defendant's conduct was tortious under state law and resulted in a constitutionally cognizable deprivation of liberty.  *See Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003).  This requires a plaintiff to show:  (1) that the defendant initiated or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; (4) that the proceeding was instituted with malice; and (5) that the plaintiff suffered a post-arraignment liberty restraint sufficient to implicate his Fourth Amendment rights.  *Rohman v. N.Y.C. Transit Authority*, 215 F.3d 208, 215 (2d Cir. 2000) (citing *Murphy v. Lynn*, 118 F.3d 938, 944-46 (2d Cir. 1997) (additional citations omitted)).

The Second Circuit has held that the favorable termination element requires "affirmative indications of innocence."  *See Lanning v. City of Glenn Falls*, 908 F.3d 19, 25-26 (2d Cir. 2018).  Therefore, alleging that certain charges simply "'were

---

[6] For the same reasons that the amended complaint adequately states an excessive force claim, the defendants' argument that qualified immunity applies, *see* Docket Item 13 at 26, is without merit.  If all the facts in the amended complaint are accepted as true, as they must be at this juncture, there is no doubt that a reasonable officer would have been on notice that his actions violated the constitution.  *See Dobbins v. Giles*, 451 F. App'x 849, 851 (11th Cir. 2012) ("[W]hen a plaintiff making an excessive force claim 'has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment' demonstrating that the officer used force maliciously and sadistically to cause harm, he has necessarily established the two prongs required to defeat a defense of qualified immunity.") (citation omitted).

dismissed[,]' . . . without specifying how or on what grounds," is insufficient to plead that the proceedings were terminated in the plaintiff's favor.  *Id.* at 28.

The amended complaint alleges that the charges of obstructing governmental administration and resisting arrest "were ultimately dismissed," but it does not include any facts regarding the circumstances of that dismissal.  Docket Item 9-1 at ¶ 14.  For that reason, Edwards has failed to plead favorable termination, an element essential to his malicious prosecution claims.  He also does not say that DePasquale or Yansick were the ones who initiated the charges against him.  *See id.*  His claim is insufficient for that reason as well.  Therefore, the motion to dismiss Edward's malicious prosecution claims is granted, and those claims are dismissed without prejudice.

### B.    Shari's Claim for Loss of Consortium

Shari alleges that as a result of the defendants' conduct, she "suffered loss of her husband's services, society, and consortium."  Docket Item 9-1 at ¶ 16.  Although the Second Circuit has not addressed the issue, all four district courts in New York agree that "a loss of consortium claim is a derivative claim that is not cognizable under [s]ection 1983."  *Kreutzberg v. Cty. of Suffolk*, 2006 WL 3370351, at *4 (E.D.N.Y. Nov. 20, 2006); *see also Baxton v. Artus*, 2015 WL 8958773, at *4 (W.D.N.Y. Dec. 15, 2015); *Wahhab v. City of New York*, 386 F. Supp. 2d 277, 292 (S.D.N.Y. 2005); *Pritzker v. City of Hudson*, 26 F. Supp. 2d 433, 445 (N.D.N.Y. 1998).  That is so because section 1983 "provides redress to a party suffering injuries from a deprivation of [the] rights, privileges or immunities secured by federal law[, and a] loss of consortium claim does not represent an injury based on a deprivation of [such] rights, privileges, or immunities."  *Pritzker*, 26 F. Supp. 2d at 445 (quoting *Stallworth v. City of Cleveland*, 893 F.2d 830,

837-38 (6th Cir.1990)).  Because the complaint raises this claim only under section 1983,  Shari's loss-of-consortium claim is dismissed.

## CONCLUSION

For the reasons stated above, the Bowerers' motion to amend, Docket Item 9, is GRANTED, and the defendants' motion to dismiss, Docket Item 5, is GRANTED IN PART and DENIED IN PART.  Edward's section 1983 claims for excessive force and false arrest or imprisonment may proceed against defendants DePasquale and Yansick; the Bowerses' remaining claims are dismissed.  The Clerk of the Court shall terminate Shari Edwards as a plaintiff and SDP and Salamanca as defendants.

The defendants shall answer or otherwise respond to the remaining claims in the amended complaint by August 31, 2021.

SO ORDERED.

Dated:   July 12, 2021
         Buffalo, New York


 */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE